# Lagomarsino *v.* Crowe *et al.*

*Bill in Equity for an Injunction.*

1. *Injunction, when owner of adjoining lot can not be restrained
from erecting a building thereon.*—The purchasers of one of
two adjoining lots in a city, upon making the purchase entered
into an agreement which recited that for and in consideration
of the sale of said lot to them by the person who was the owner
of said two adjoining lots, they agreed and bound themselves
to erect on said lot so purchased by them "a three story brick
metal roof building at least one hundred feet long," and fur-
ther agreed and bound themselves "to erect the wall on the
southern boundary of said lot (which was the northern boun-
dary line of the adjoining lot), with apertures for joists to be
used by the owner" of the adjoining lot, at any time the owner
of said adjoining lot "may choose to erect the building thereon
without cost to the owner of said lot for said wall, for a
building of like dimensions." This agreement was signed
by the purchasers alone and not by the vendor. The pur-
chasers erected the building stipulated for on said lot, but
the southern wall of said building was not erected wholly or
even mainly on said lot, but a greater portion of said wall
was erected on the said adjoining lot. *Held*: That neither
of said purchasers nor those claiming under them could en-
join the owner of the adjoining lot from erecting a two
story brick building on said adjoining lot and joining it to
the southern wall erected by said purchasers.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed by the appellant, John
P. Lagomarsino, against the appellee, Belle T. Crowe
and her husband, James R. Crow; and prayed to have
the defendant enjoined from erecting on lot 14 in block
71, in the city of Sheffield, which adjoined a lot owned

[Lagomarsino v. Crowe *et al.*]

by the complainant, a two story brick wall in the course of construction.

It was averred in the bill that the complainant had, by purchase, become the owner of lot 13 in block 71, in the city of Sheffield, which had been sold to Davega Bros. by Horace Ware, and that the respondent, Belle T. Crowe, had become the owner, by purchase from Horace Ware, of lot 14 in block 71. An agreement entered into by Davega Bros. at the time of the purchase of lot 13, and which is copied in the opinion, is made the basis of the ground of the relief prayed for.

On the filing of the bill a temporary injunction was issued. The respondents answered the bill and moved to dismiss the bill for the want of equity. They also moved to dissolve the injunction upon the denials of the answer. The facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

On the submission of the cause on the motion to dismiss the bill and to dissolve the injunction, the court rendered a decree overruling the motion to dismiss the bill, and sustaining the motion to dissolve the injunction. From this decree dissolving the injunction the complainant appeals, and assigns the rendition threeof as error.

THOS. R. ROULHAC, for appellant, cited Washburn on Easements, 454; *Trustees v. Lynch*, 70 N. P. 445; 3 Pom. Equity, § 1295; *Bisquay v. Jeunelot*, 10 Ala. 245; *Antomarchi v. Russell*, 63 Ala. 358; *McMinn v. Karter*, 116 Ala. 390; *Graves v. Smith*, 87 Ala. 451; *Preiss v. Parker*, 67 Ala. 508; *Jackson v. Jackson*, 84 Ala. 345; *Rembert v. Brown*, 17 Ala. 667; *Miller v. Bates*, 35 Ala. 580; 2 High on Inj., §§ 1472, 1481; 1 Beach on Inj., §§ 309, 313; *Farris v. Houston*, 78 Ala. 250; *Columbus, etc., v. Witherow*, 82 Ala. 190; *Armstrong v. Potts*, 23 N. J. Eq., 92; *Steamboat Co. v. Transp. Co.*, 28 Fla. 387, 419-20; 1 Pom. Eq. Jur., § 390; 2 Pom. Eq. Jur., § 818; 6 Lawson Rights, Rem. and Pr., § 2701, p. 4409; *Roberts v. North Pac. Co.*, 158 U. S. 77; *Keokuk v. Scotland*, 152 U. S. 515; *Forney v. Calhoun County*, 84 Ala.

215; *Forney v. Calhoun County,* 86 Ala. 466-7; *Jones* v. *S. & N. O. R. R. Co.,* 68 Ala. 48; *Hooper v. C. & W. R. R. Co.,* 78 Ala. 213.

JOSEPH H. NATHAN, *contra,* cited 2 Washburn on Real Property, 363; *Sherrod v. Cisco,* 4 Sandf. 480; *McMinn v. Karter,* 116 Ala. 390; *Gilbert v. Woodruff,* 40 Iowa 320; *Negus v. Becker,* 143 N. Y. 313; *Petzel v. Drover's Bank,* 78 Md.; 6 Lawson's Rights, Rem. and Prac., § 2790; *Matts v. Hawkins,* 5 Taunt. 20; *Brooks v. Curtis,* 50 N. Y. 639; *Andras v. Hazeltine,* 46 Am. Rep. 635; *Wolfe v. Frost,* 4 Sandford 71; *North Beach & M. R. Appeal,* 32 Cal. 506; *Sands v. Thompson,* 43 Ind. 24; *Rice v. Roberts,* 24 Wis. 466.

McCLELLAN, C. J.—Horace Ware, owning two adjoining lots in Sheffield numbered 13 and 14, respectively, in block 71, sold one of them, that numbered 13, which lay north of lot 14, to Davega Bros. In connection with the sale and as a part indeed of the transaction Davega Bros. entered into an agreement in the following language: "This agreement witnesseth that, whereas, Horace Ware, of the county of Jefferson and State of Alabama, has this day sold to Davega Bros., a firm composed of Isaac Davega, Jr., and Solomon B. Davega, of the City and State of New York, a certain lot of land in the City of Sheffield, County of Colbert and State of Alabama, known and designated as lot numbered (13) thirteen in block numbered (71) seventy-one, now, therefore, for and in consideration of the above sale, we, Davega Bros., agree and bind ourselves to erect on the premises aforesaid a three story, brick, metal roofed building to be at least one hundred feet long, and we further agree and bind ourselves to erect the wall on the southern boundary of said lot with apertures for joists to be used by the owner of lot numbered (14) fourteen in block numbered (71) seventy-one, at any time the owner of lot numbered (14) fourteen in block numbered (71) seventy-one may choose to erect a building thereon, without cost to the owner of said lot for said wall; for a building of like dimensions. In testimony whereof, we have hereunto set our hands and

seals this 24th day of September, 1887." (Signed) "Davega Bros." and duly attested. The exigencies of this special appeal require of us a construction of this agreement in so far as it bears upon the asserted rights of Davega Bros., who have erected the building stipulated for on lot 13, and its southern wall in accordance with the stipulation, to enjoin Ware from erecting a *two* story brick house on lot 14 and joining it onto the southern wall of Davega Bros.' said building on lot 13. This southern wall was not erected wholly, or even mainly on lot 13, but of its eighteen inches breadth or thickness, fourteen inches is rested on lot 14 and only four inches on lot 13. It is claimed for Davega Bros. that the intendment of the agreement thus executed by them and accepted by Ware was that the wall should rest in part upon both lots, and that its precise location— more on 14 than 13—is within the contemplation and authorization of the writing. For the purposes of the determination of the case as it is now presented, we shall assume that these positions of appellant are well taken, and that by force of this undertaking by Davega Bros. and Ware's acceptance of it, the former acquired the right to erect this wall to the extent stated on Ware's lot 14. Of course, the mere sale without more of lot 13 to them gave Davega Bros. no such right, and if they did it at all, as counsel insist, and as we assume they did, they acquired it under this agreement, constituting, as it did, a part of the transaction of the sale by Ware to them. So far as this agreement indicates and so far as appears in any way in the case, Ware's only interest in the character of building to be erected on lot 13 was that the wall of it next to his remaining lot should be of brick with apertures for joists left in it sufficient in number and position for the joining onto this wall of a three story house which might be erected on lot 14. The consideration moving Davega Bros. into this covenant may have been the right they by it acquired to erect one wall of their building mainly on land which did not belong to them or it may have been a reduction in the purchase price of lot 13, singly or in connection with the acquisition of the right to rest the

[Lagomarsino v. Crowe *et al.*]

wall largely upon lot 14. That the consideration for their covenant was one or both of the matters just mentioned, there can be little if any doubt. It is not pretended that the joining onto their building of another of the same dimensions and even constructed of *like material* would have been of any advantage or benefit to their building or to them in any other way. It is alleged in the bill that the joining onto this wall of any building of less than three stories in height would impair and weaken the wall, endanger their building and, thus, irreparably injure them. This, however, is specifically denied in the answer, and the affidavits submitted on the motion to dissolve the temporary injunction are satisfactory to show that the joining on of a building of two stories would not injuriously affect the wall at all. It is also alleged in the bill that the joining onto Davega Bros.' building of one of less height would entail greater danger from fire to the former than would result from a building of the same height; but this seems unreasonable and is denied by the answer and disproved by the affidavits. With these preliminary suggestions and assumptions we come now to inquire whether by force of the agreement executed by Davega Bros. and its acceptance by Ware the latter is precluded to erect on lot 14 a building of other dimensions than those of the building erected by Davega Bros. on lot 13. In the first place, it is not reasonable to suppose that Ware would have voluntarily and without consideration have so limited and embarrassed his use and enjoyment of his remaining lot. It is improbable to a degree that he, after having accorded full consideration to Davega Bros. for erecting the wall as that he could join onto it, without any reference to or account being taken of the character of the building he should erect, should have without money and without price materially lessened the value of his property by restricting his use of it to the erection of a building of prescribed dimensions. In the next place, it is equally unreasonable and improbable that Davega Bros., having already received full compensation for leaving apertures in their southern wall for joists, should have insisted upon a further consideration for so doing; and especially so when this fur-

ther consideration was one solely of detriment to Ware, and as we have seen of no sort of benefit to them. There might have been some occasion from the point of view of Davega Bros. for an engagement on the part of Ware to construct the building on his lot of uninflammable *material*—as of brick with a metal roof—as making for the immunity of their own building from fire, and if they had had in mind to secure an additional consideration and benefit to themselves for building their wall for future use by Ware, it would seem in all reason that the stipulation would have had reference to Ware's building in this respect, and not to its dimensions at all. So that we feel safe in the conclusions that nothing passed to Ware to induce him to limit and curtail the uses of his lot and consequently its value by agreeing to erect only a three story one hundred foot building upon it, that Davega Bros. had no interest to be subserved by requiring such an agreement, and that, of consequence, looking thus to the whole transaction and the situation of the parties, the mind is so inclined against the parties having entered into such a stipulation of only positive detriment to one without benefit to the other, as that the writing must clearly import it or it must be held not to have been made. Again, this covenant is signed by Davega Bros. and not by Ware. All its express engagements are by and from Davega Bros. to Ware. It expresses no undertaking of Ware whatever. And while we are proceeding upon the assumption that Ware's acceptance of the covenant saddled upon him whatever the paper fairly construed imports that he assumed to do, yet there is potency in the suggestion that so important a matter as a covenant on Ware's part to use his lot only for the purpose of erecting a three story building thereon would not have been left to inference or construction had it been the intention of the parties that Ware should assume this burden, but would have been clearly expressed in a writing signed by him. Recurring to the language of the agreement, we do not find that it clearly, or at all in fact, imports a covenant on Ware's part not to build a two story house, or any other than a three story house

on lot 14. The words, "for a building of like dimensions," are at the end of the writing. They do not aptly and smoothly join themselves on to the words which immediately precede them. They relate not to the immediate preceding words or stipulation, but have reference to the stipulation for joist apertures further back in the writing. · They appear to have been added as an afterthought and to make clearer a term of the covenant which upon reading the paper the writer of it deemed obscure. *They relate to the extent to which joist apertures* should be let into the wall. The writing preceding this clause did not in express terms prescribe the number, position or extent of the joist apertures to be left in the wall for joining thereto a building on lot 14. It is not therein stated whether they should extend the whole length of the wall, nor whether they should extend to the top of it. It is not therein set forth that the apertures should be for an hundred foot building, nor for a building of one, two, or three stories. . The purpose, however. was for the apertures to extend over the entire three story, hundred foot wall. Possibly the writing without its last clause would have imported and been construed to provide for apertures covering the whole wall. But that there might be no room for doubt or subsequent dispute about this, and, in our opinion, for no other purpose, words were added making the covenant plain and unmistakable in this regard. The words, as we have seen, were: "for a building of like dimensions." They were proper and necessary to a clear expression of the purpose of the parties that the whole of this wall should be provided with apertures for joists for War'e use. They were added to the writing not to impose the burden of building a three story, hundred foot house on him, if he should build at all, not to his detriment at all, but for his benefit, by making it clear beyond doubt and room for dispute that the covenantors were to provide apertures for joists over the whole surface of their southern wall. The intention in this connection would perhaps stand out in bolder relief if we transpose this last clause and set it down in juxtaposition to that part of the text to which it obviously relates. The paper would then read: and we further agree

[*Ex parte* Bogatsky Brothers & Co.]

and bind ourselves to erect the wall on the southern boundary of said lot *with apertures for joists for a building of like dimensions,* or, in other words, with sufficient joist apertures for joining onto it of a three story building one hundred feet in length. But without more or without such transposition, the clause in question is merely a part of the covenant to let apertures for joists into the wall, and its sole purpose and effect is to define the extent to which apertures should be left in the wall, and this purely for the benefit of Ware. It was not intended to and it does not impose any duty or burden on Ware or his successors in estate in respect of the character of the building to be erected on lot 14. It secured to him the right to have joist apertures let into the whole face of the wall and to use the wall and these apertures as a part of any building he might choose to erect on lot 14, whether of one, two, or three stories, and it leaves him and his grantees wholly unfettered as to the character of building they may join onto the wall.

Our conclusion, therefore, is that on the case made by the bill and answer and affidavits, the chancellor properly sustained the motion to dissolve the temporary injunction, and the decretal order dissolving the injunction will be affirmed.

We have considered the affidavits only because the motion to dissolve was submitted on them as well as upon the denials of the answer, and they were offered by both parties without objection from either.

Affirmed.